**Dorothy McCOY, Plaintiff,**

**v.**

**WEAN UNITED, INC., Defendant.**

**Civ. A. No. 3098.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

March 6, 1975.

---

Gary E. Brewer, Morristown, Tenn., for plaintiff.

Richard M. Currie, Jr., Kingsport, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The jury herein found that the defendant Wean United, Inc. (Wean) is liable to the plaintiff Miss McCoy for

the permanent injuries and damages she suffered while using Wean's product and awarded her damage of $40,000 therefor. See judgment herein of January 10, 1975. Wean moved timely for a judgment notwithstanding the verdict, Rule 50(b), Federal Rules of Civil Procedure, or for a new trial, Rule 59(a)(1), Federal Rules of Civil Procedure. That motion lacks merit.

The Court submitted to the jury the issues:

First: was the press sold by Wean to Lear Siegler, at the time it left Wean's hands, in a defective condition and unreasonably dangerous to Miss McCoy, as a user of the product? If you answer this question in the affirmative, then you must decide:

Secondly: was Wean engaged in the business of selling presses of this type? If you answer this in the affirmative, you must then decide:

Thirdly: was the press expected to, and did it, reach Miss McCoy without substantial change in the condition in which it left Wean's plant? If you decide that question in the affirmative, then you must decide:

Fourthly: was the press being used by Miss McCoy in the way or manner it was intended to be used or in a normal manner? If your answer to that question is in the affirmative, you must next decide:

Fifthly: were any injuries and damages sustained by Miss McCoy a proximate result of the aforementioned defective and dangerous condition of the press?

If you found any of the foregoing issues in the negative, you will go no further but find for the defendant Wean. If, on the other hand, you found all these issues in the affirmative, you must go further and decide:

Sixth, did Miss McCoy assume the risk of injury? If you find that she did assume the risk of her injuries, then you will find for the defendant Wean.

Finally, if you find that Wean is strictly liable to Miss McCoy without any showing of fault; and, if you find that Miss McCoy is not barred from recovering by assuming the risk, then your verdict will be for her.

Now, if you have found that Wean is *not* liable to Miss McCoy without a showing of fault, you must proceed to consider * * * the negligence claims of the parties.

 There was evidence before the jury on the strict liability issue that when Wean sold this product to Miss McCoy's employer and it left Wean's hands, it was in a defective condition and unreasonably dangerous to Miss McCoy, as a user of the product, in that Wean's personnel knew that the product, which was designed to activate only once when its switch was engaged, would in reality activate twice on occasions when its switch was engaged, and such personnel provided those who might be expected to use this product in the normal course of commerce with inadequate notice of this danger. " *. * * [T]he Restatement [of the Law (Second), Torts 2d (1965), § 402A] requires that a seller who has reason to believe that danger may result from a particular use of his product to provide adequate warning of the danger in order that the product's potential for harm may be reduced. Failure to give such a warning when it is required will itself present a 'defect' in the product and will, without more, cause the product to be 'unreasonably dangerous as marketed.' * * * " (Footnote reference omitted.) Reyes v. Wyeth Laboratories, C.A.5th (1974), 498 F.2d 1264, 1274–1275[15].

There was evidence that Miss McCoy's employer had made substantial changes in Wean's product from the condition in which it left Wean's plant, but there was no evidence that any such change affected the propensity of the product occa-

sionally to "double-trip", as described hereinabove. Further, there was evidence that Miss McCoy was using Wean's product when she was injured by it in the normal way or manner in which it was intended to be used, and that her injuries and damages proximately resulted from the aforementioned defective and dangerous condition of the press. Although there was evidence that Wean's product had "double-tripped" on an additional occasion after it left Wean's hands, it was uncontradicted that Miss McCoy was not advised of this incident until after receiving her own injury. Thus, there was no evidence presented from which the jury might have inferred reasonably that Miss McCoy assumed the risk of her injuries.

It appears accordingly that the jury decided Wean was strictly liable to Miss McCoy without proceeding to the negligence questions. Therefore, the jury was not confronted with the problem of Miss McCoy's contributory negligence, her voluntary assumption of the risk of her injuries, or the selection between two equally probable causations of the accident. The defendant produced theories as to how this accident occurred, but the only direct evidence of causation was Miss McCoy's testimony that her injuries were inflicted when the product "double-tripped".

For such reasons, Wean's motion in both its aspects hereby is

Overruled.

The plaintiff also made a timely motion for the suggestion of an additur under pain of a new trial on the issue of damages. Rule 59(a)(1), *supra*. This motion has merit. As to damages, the verdict returned by the jury herein was palpably and grossly inadequate under the proof. " * * * Where the verdict returned by a jury is palpably and grossly inadequate * * *, it should not be permitted to stand * * * ". Dimick v. Scheidt (1935), 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603, 611. Tennessee law permits the suggestion of an additur to an inadequate jury verdict, as follows:

* * * In cases where, in the opinion of the trial judge a jury verdict is not adequate to compensate the plaintiff * * * in compensatory damages * * *, the trial judge may suggest an additur in such amount * * *, as he deems proper to the compensatory damages awarded by the jury * * *, and if such additur is accepted by the defense, it shall then be ordered by the trial judge and become the verdict, and if not accepted, the trial judge shall grant the plaintiff's motion for a new trial because of the inadequacy of the verdict upon proper motion [sic: motion's] being made by the plaintiff.

T.C.A. § 20–1330. A consideration in whether a federal court sitting in Tennessee is authorized to apply the Tennessee additur statute is, whether it is substantive or merely procedural in nature. Erie R. Co. v. Tompkins (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. This Court confronted that question soon after the additur rule was enacted, Anna Ruth Simmons, Etc., plaintiff, v. Carl N. Sheffield, Etc., Et Al., defendants, civil action no. 2565, this district and division, memorandum opinion and order of May 17, 1971, and decided that it is substantive.

"The laws of the several states, except where the Constitution or treaties of the United States or acts of Congress otherwise require or so provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652. " * * * [F]ederal courts should conform as near as may be—in the absence of other considerations—to state rules even of form or mode where the state rules may bear substantially on the question whether the litigation would come out one way in the federal court and another way in the state court

if the federal court failed to apply a particular local rule. * * * " Byrd v. Blue Ridge Rural Elec. Coop. (1958), 356 U.S. 525, 536–537, 78 S.Ct. 893, 900, 2 L.Ed.2d 953, 962 (headnote 6), rehearing denied (1958), 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375.

The evidence of Miss McCoy's damages was largely uncontested. She incurred medical expenses as a result of this accident aggregating $5,217.88. She had at trial a life expectancy of 49.-46 years. She aspired to education and a career in health and physical education and was working during the summer vacation when she was injured to finance her college education to further this goal. Her college marks have suffered since the accident. As a direct and proximate cause of this accident, her right hand and wrist were virtually amputated, and the little finger of her left hand was amputated therein. She was hospitalized for nine days. She experiences "phantom pain" in her lost members. She sustained a permanent impairment of 90% of her upper right extremity and a 100% permanent impairment of her left little finger. She sustained also a permanent depressive traumatic neurosis reaction as a result of the accident, has been under psychiatric treatment therefor for two years, and requires additional attention. She has lacked social liaisons with young men since the accident. She has difficulty doing work in her home, dressing herself, and generally all activities requiring the use of her left arm and hand. She is disfigured cosmetically by virtue of the presence of a prosthetic device and the absence of her finger. She proved no loss of earnings or diminution of earning capacity.

These elements were all made to appear on the trial. The Court instructed the jury in this respect, *inter alia*:

\* \* \* \* \* \*

In arriving at an award for Miss McCoy, you should include such amount as will reasonably compensate her for:

—the reasonable value, not exceeding the actual cost to her of any examination, attention and care of physicians, surgeons and others, reasonably required and actually given in her treatment, which is stipulated to be $5,217.88; and,

—the reasonable and necessary expenses to her of any medical, surgical, hospital and other services and care required in her future treatment as a proximate cause of the injuries in question.

You may also include such a sum as will compensate Miss McCoy for any pain, suffering and mental anguish already suffered by her and proximately resulting from the injuries in question, and for any such pain, suffering, and mental anguish as she is reasonably certain to suffer in the future from the same cause.

This Court can only conclude from the paucity of the award of damages to Miss McCoy that the jury disregarded the evidence of her damage, did not consider all of the elements of damage involved, or failed to follow the instructions of the Court.* Any such consideration is ample to justify the award of a new trial. See 58 Am.Jur.2d 361, New Trial, § 153, cited and quoted from in Flexler v. Crawley, C.A.Tenn. (1953), 37 Tenn.App. 639, 645, 269 S.W.2d 598, certiorari denied (1954).

---

* As a possible explanation for any failure of the jurors to follow the instructions of this Court, the clerk's certificate of February 10, 1975 indicates they may have considered in determining the amount of their award a matter not properly before them and reduced such amount in accordance therewith.

Such certificate reflected that half of the jurors inquired of the clerk after the trial " * * * how much the plaintiff had received from her employer by reason of the accident * * * ", and there was a strong showing of culpability of the plaintiff's employer in connection with this accident.

■ In view of the Constitution, Seventh Amendment, guaranteeing jury trials in federal district courts, this Court does not have the power to increase the amount of damages awarded to a plaintiff in an action for a personal injury, without the consent of the plaintiff, although the increase may be assented to by the defendant pursuant to the Court's order that the plaintiff's motion for a new trial be granted on the ground of the inadequacy of the award of damages unless the defendant would consent to an increase to a certain sum. Dimick v. Schiedt, *supra*, 293 U.S. at 486, 55 S.Ct. at 301, 79 L.Ed. at 611 (headnote 4). Here, however, not only has the plaintiff consented to an additur; she requested it and requested the Court to apply the applicable Tennessee statute. If this Court failed to apply the rule of that statute, this litigation would come out one way in this Court when it would have come out another way in a Tennessee state court; so the state statute bears substantially on this question. See Byrd v. Blue Ridge Rural Elec. Coop., *supra*.

■ It being the opinion of this Court that the jury verdict herein is not adequate to compensate the plaintiff in compensatory damages, the Court suggests an additur of $115,217.88 to the compensatory damages awarded by the jury herein. It hereby is

Ordered that a new trial on the issue of damages because of the inadequacy of the verdict as to damages will be granted, unless within 30 days herefrom the defendant shall produce and file in the office of the clerk of this Court at Greeneville, Tennessee an additur of $115,217.88 to the compensatory damages awarded by the jury herein. In case of such additur, the plaintiff's motion for a new trial on such grounds hereby is denied. The Court found and concluded that it appears clearly that the issue of liability has been determined in a manner which was eminently correct, and that the issue of damages is so distinct and separable from the issue of liability that a new trial as to damages alone may be had without the risk of any injuries. See Gasoline Products Co. v. Champlin Refining Co. (1931), 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188, 1191 (headnote 4). This Court is convinced that the jury's mistake in awarding damages did not in any way affect its determination of the issue of liability herein. Thompson v. Camp, C.C.A.6th (1948), 167 F.2d 733, 734[2].