Miles A. MATHIS, JR., Theresa Mathis,
Plaintiffs–Appellants,

v.

BOWATER INCORPORATED,
Defendant–Appellee.

Nos. 91–6469, 92–5028.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 25, 1992.

Decided Feb. 8, 1993.

Hubert E. Hamilton, III (argued and
briefed), Bennett & Hamilton, Rossville,
GA, for plaintiffs-appellants.

William A. Simms (argued and briefed),
Samuel C. Doak (briefed), Arnett, Draper &
Hagood, Knoxville, TN, for defendant-ap-
pellee.

Before: KEITH, NELSON and RYAN,
Circuit Judges.

KEITH, Circuit Judge.

Miles and Theresa Mathis, plaintiffs-ap-
pellants appeal from the district court's
October 4, 1991 order in favor of defen-
dant-appellee, Bowater Incorporated. The
court granted Bowater's motion for sum-
mary judgment. For the reasons set forth
below, we AFFIRM.

## I.

Bowater, which owns and operates a paper mill in Calhoun, Tennessee, undertook the "Kraft Mill Project" ("the Project"), to renovate the facilities at the mill. As part of this process, Bowater contracted with several companies for construction, renovation and design services. In order to coordinate the services provided by these various companies, Bowater instructed a group of its employees to oversee the work.

On April 5, 1988, after work began at the preliminary site, Bowater entered into a contract with Bechtel Construction Company to provide various construction services for the Project. Pursuant to this contract, Bowater retained control of the work schedule as well as other aspects of the construction and renovation process. For example, Bowater retained the right to specify and reject subcontractors hired by Bechtel to complete portions of the Project. In turn, Bechtel retained the right to enter into separate agreements with various unions for the supply of skilled workers for the Project.

On July 26, 1989, the appellant, an employee of Bechtel, was struck by a log ejected from a conveyor while he was working on the Project. Appellant suffered permanent injury to his back. He was laid off in January, 1990 after being placed on a restricted work status for several months. Bechtel provided appellant medical treatment pursuant to Tennessee's Workers' Compensation Law. On May 31, 1990, appellant settled his worker's compensation claims with Bechtel's insurance carrier.

On June 5, 1990, appellants, Miles and Theresa Mathis, filed suit in the United States District Court for the Eastern District of Tennessee against Bowater to recover for injuries suffered by Mr. Mathis ("Mathis"). Mathis was struck by a log while working for his employer, Bechtel Construction Company, on Bowater's premises. Bowater raised a number of defenses in its answer to the complaint, including contributory negligence, assumption of the risk, intervening cause, and exclusive remedy as a bar to appellant's action.

Subsequently, various interrogatories were exchanged by the parties. The case was scheduled for trial on September 3, 1991. On August 5, 1991, Bowater filed a motion for summary judgment, arguing they were in fact the principal contractor of the Project, and therefore a statutory employer. Under Tennessee Workers' Compensation Law, a statutory employer is responsible for providing worker's compensation insurance but immune to tort liability. On September 3, 1991, the district court granted Bowater's motion for summary judgment. From that order, plaintiffs filed two separate notices of appeal, which have been consolidated by this Court.

## II.

■ To grant summary judgment, a court must determine that "there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. This Court reviews the district court's grant of summary judgment for Bowater *de novo. White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943 (6th Cir.1990). This Court must view all facts and inferences in the light most favorable to the nonmoving party, and the moving party shoulders the burden of showing no genuine issue of material fact exists. The nonmoving party, however, may not rest on its pleadings, but must come forward with probative evidence which would make it necessary to resolve the factual dispute at trial. *Id.* at 943–44. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Jurisdiction in this case is based upon diversity, therefore the district court's application of Tennessee Workers' Compensation Law was proper. *See Tennessee River Pulp and Paper Co., v. Eichleay Corporation,* 708 F.2d 1055, 1057–58 (6th Cir.1983). The district court found, and the appellant does not dispute, that the Tennessee Workers' Compensation Law, T.C.A. § 50–6–108 (Supp.1990) requires an employer to compensate an employee for injuries he sustains, even if those injuries are not a result of the employer's negli-

gence. In turn, the employee is barred from recovering damages from his employer for injuries resulting from his employer's negligence making worker's compensation benefits the employee's exclusive remedy. *Posey v. Union Carbide Corp.* 705 F.2d 833, 834 (6th Cir.1983).

The responsibility for workers' compensation benefits and immunity to tort liability is expanded beyond the direct employer, under T.C.A. § 50–6–113. Specifically, the statute states:

> *Liability of principal, intermediate contractor or subcontractor.*—(a) A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject matter of the contract to the same extent as the immediate employer.
>
> . . . . .
>
> (c) Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's rights to recover compensation under this chapter from the principle or intermediate contractor, provided that the collection of full compensation from one (1) employer shall bar recovery by the employee against any others, nor shall he collect from all a total compensation in excess of the amount for which any of said contractors is liable.
>
> (d) This section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control and management.

Under T.C.A. § 50–6–113, if a subcontractor's employee is injured on premises under the principal contractor's control, the principal contractor is liable to that employee to the same extent as the subcontractor. That principal contractor, however, is immune, to tort actions of that injured employee, to the same extent as the subcontractor.

To determine whether an owner is acting as its own principal contractor, in *Stratton v. United Inter-Mountain Telephone,* 695 S.W.2d 947 (Tenn.1985), the Tennessee Supreme Court listed the following factors for consideration:

> (1) right to control the conduct of work; (2) right of termination, (3) method of payment; (4) whether alleged employee furnishes his own helpers (5) whether alleged employee furnishes his own tools; and (6) whether one is doing 'work for another'.

*Stratton,* 695 S.W.2d at 950. The *Stratton* court further explained that, while no single issue is dispositive, the "right to control the work has been repeatedly emphasized". *Id.* In evaluating whether an owner has the right to control, the court stated "the test is not whether the right to control was exercised but merely whether this right to control existed". *Id.*

In addition to the right to control, the Tennessee Supreme Court in *Acklie v. Carrier,* 785 S.W.2d 355 (Tenn.1990), cited other aspects of being a principal contractor. In that case, the court found an owner to be its own principal contractor because:

> [The Company] selected the subcontractors, coordinated the work, made changes periodically in the plans and had work redone, and its own employees performed [many of the necessary] tasks.

*Acklie,* 785 S.W.2d at 358.

Furthermore, this Court also used the above listed factors in *Ronald Lyness v. Bowater, Inc.* 941 F.2d 1210 (6th Cir.1991) (unpublished per curiam). The *Lyness* panel was faced with similar facts and held that Bowater was its own principal contractor, where Mr. Lyness' direct employer was a "resident contractor" for Bowater.

■ In the case at bar, the district court found that a principal contractor/subcontractor relationship existed between Bowater and Bechtel, respectively. The district court based its finding primarily on: the contract between Bechtel and Bowater, and the affidavit and deposition of Edwin N. Scott, the manager of the Project. The appellant does not dispute the veracity of the information in any of these documents.

Instead, appellant maintains that in spite of the contract and testimony of Mr. Scott, Bowater was simply the owner and not the principal contractor. Review of the contract, as well as other evidence submitted, reveals that under the Tennessee Workers' Compensation Law, Bowater was the principal contractor. As noted above, the court in *Stratton* emphasized that an owner's retention of the right to control the work to be done is a strong indication that the owner was acting as its own principal contractor. *Stratton* at 950. Provisions within the "Contract for Procurement and Construction Services" [1] between Bowater and Bechtel indicate that Bowater retained a great deal of control over the Project.

In addition to Bowater's high level of control over the Project, Article XI of the contract further indicates that Bowater was acting as the principal contractor. For example, by requiring Bechtel to maintain workers' compensation insurance, Bowater was protecting itself against a claim by an injured Bechtel employee, like Mathis. The only way that Bowater would be liable to the Bechtel employee's workers' compensation claim is if Bowater were the principal contractor, and Bechtel were a subcontractor.

As noted above, Edwin N. Scott was the manager for the Project. Mr. Scott's testimony, which is uncontested by the appellant, indicates that Bowater was acting as its own principal contractor. Specifically, Mr. Scott testified that:

1. Preliminary work was done by other contractors before Bowater contracted with Bechtel, including site preparation, removal of a parking lot and relocation of water and electrical lines.

2. Bowater assisted Bechtel in the selection of its subcontractors, approving some and rejecting others.

3. Bowater was integral in the coordination and planning of the Project, before, during and after Bechtel was involved.

4. Bowater was involved in the purchasing of tools and equipment.

5. After Bechtel ceased working on the Project, Bowater directly hired other contractors to complete the remaining work; also, Bowater's own employees eventually assisted in the completion of the Project.

This is in direct accord with the criteria listed in *Acklie*.

## III.

Under the Tennessee Workers' Compensation Law, Bowater is immune from tort liability, as a principal contractor. A *de novo* review of the evidence reveals that Bowater was acting as its own principal contractor and Bechtel was one of its subcontractors. In light of the strict correlation between the facts of this case and the standards set forth for determining whether an owner is its own principal contractor, the district court did not err by granting summary judgment to Bowater. Bowater was acting as a principal contractor, and is

---

1. For example, according to appellee's brief:
   Article II, Section B: Bechtel acted as Bowater's agent for procuring materials, equipment, supplies and related services for construction of the project, not specified to be furnished by or on behalf of others; Bowater's approval was required regarding general terms and conditions, including warranties to be incorporated in all bid packages, subcontracts, contracts and purchase orders entered into by Bechtel.
   Article II, Section C: Bechtel was required to furnish construction equipment and tools but had to consult Bowater, whose agreement was required with regard to the source of the equipment and tools and whether they should be acquired by purchase, lease or rental.
   Article II, Section D: Bowater furnished field office space, field clerical employees, utilities, communications, reproduction services, supplies, and related materials and services as necessary for the proper performance and start up of testing services.
   Article II. Section G: Bechtel was required to prepare for Bowater's approval a schedule for the performance of the work.
   Article IV: Bowater appointed three of its employees to sit on a review board with three Bechtel employees for the purpose of determining what, if any, incentive pay Bechtel should receive under the parties' contract.
   Article VI: Bowater had the right to require or approve changes within the general scope of the project of the work.
   Article XI: Bechtel was required to maintain in full force and effect worker's compensation insurance covering Bechtel employees as required by law and employer's liability insurance.

therefore immune to tort liability, under the Tennessee Worker's Compensation Law. For the forgoing reasons, we AFFIRM the summary judgment dismissal of the Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee.

RYAN, Circuit Judge, dissenting.

I disagree with the majority's conclusion that Bowater Incorporated is a statutory employer entitled to the exclusive remedy provisions of Tennessee workers' compensation law. I therefore respectfully dissent.

The policy behind Tenn.Code Ann. § 50–6–113 (1992) is

> to insure as far as possible to all workers payment of benefits when they [are] injured in the course of their employment.... The section passes coverage from employers who might not have coverage to intermediate or principal contractors who do have coverage. This prevents employers from contracting out normal work simply to avoid liability for worker's compensation.

*Stratton v. United Inter–Mountain Tel. Co.*, 695 S.W.2d 947, 951 (Tenn.1985) (citations omitted). As an initial matter, I note that the statutory policy, as framed by Tennessee courts, is not implicated in this case: Bechtel Construction, a huge international construction company, is not the type of irresponsible employer not likely to carry worker's compensation insurance. Instead, as the majority opinion notes, the contract between Bechtel and Bowater specifically required Bechtel to obtain workers' compensation insurance and, in fact, certain of the plaintiff's costs incurred as a result of the accident were covered by that policy. Of course, the mere fact that the policy underlying the statute is not implicated here would not alter the outcome if the language of the statute embraced the facts of the case. My reading of the two principal Tennessee supreme court cases addressing this issue, *Stratton*, 695 S.W.2d at 947, and *Acklie v. Carrier*, 785 S.W.2d 355 (Tenn.1990), as well as a significant number of published and unpublished Tennessee courts of appeal decisions, satisfies me that section 50–6–113 does *not* embrace the facts of this case.

As the majority opinion notes, *Stratton* cited six indicia of control relevant to the determination whether an owner is also a principal contractor. *Stratton*, 695 S.W.2d at 950. Tennessee courts utilize these factors in an attempt to categorize the relationship between the owner of the premises and the employer of the injured employee— here, Bowater and Bechtel, respectively. The Tennessee courts employ an analogy between employer/employee and customer/independent contractor relationships: if the relationship between Bowater and Bechtel is most akin to a relationship between an employer and employee, Bowater should be deemed a principal contractor; if, alternatively, it is more like the relationship of a customer and an independent contractor, Bowater should be deemed a mere owner, and not a principal contractor. *See id.* at 951; *see also Manis v. American Cable Sys. of Tennessee*, 640 F.Supp. 427, 430 (E.D.Tenn.1986). The majority opinion lists the six *Stratton* indicia of control and concludes that because Bowater meets many of these criteria, it must be a principal contractor under Tennessee law. Closer scrutiny of the facts of this case reveal, however, that certain elements of apparent control were only necessary by-products of the exigencies peculiar to administering a cost-plus contract, and to having major construction work done at a site where Bowater's normal business was in continuous operation. That is, Bowater exercised some discretion over selection of subcontractors by Bechtel *not* in order to supervise the quality of their construction work but only in order to reduce prices, because the contract was cost-plus. Bowater exercised some discretion over the daily schedule of operations *not* because they had a particular construction agenda but only to ensure that Bechtel's and the subcontractor's work would not interfere with Bowater's regular business operations. The control exercised by the owner/principal contractor in *Stratton* and *Acklie* was directly related to the construction work itself, and it is for that reason that the relationship

between the owner and the employer of the injured employee was deemed to be most like an employer/employee relationship. *See Acklie,* 785 S.W.2d at 358; *Stratton,* 695 S.W.2d at 952–53. Here, the relationship between Bowater and Bechtel was much more akin to a customer and an independent contractor, or, as one court reasoned, to a "homeowner's hiring someone to paint his house." *Fugunt v. TVA,* 545 F.Supp. 977, 980 (E.D.Tenn.1982).

I believe the majority erroneously focuses on the superficial aspects of the contract between Bowater and Bechtel, rather than inquiring into the meaning of the terms that indicate control by Bowater. The control exercised here was control only over the bottom-line and the coordination of Bowater's business with Bechtel's construction.[1] It was not the kind of control on which Tennessee courts have predicated a determination that an owner is also a principal contractor: that is, control over the construction.

In addition, there are two important distinctions between this case and the precedents relied on in the majority opinion. In *Stratton* and *Acklie,* as well as in many other Tennessee cases, an important factor in the court's determination was that the contractor hired by the owner was hired to perform the same type of work the owner's employees usually performed. The court in *Stratton* discussed "typical independent contractor situations: an employer subcontracts work that is totally different from his regular line of work and therefore cannot be adequately performed by his own employees." *Id.* at 952. This situation was contrasted with the situation before the court, where the plaintiff "performed work usually performed by regular Telephone Company employees." *Id.; see also Manis,* 640 F.Supp. at 429; *Fugunt,* 545 F.Supp. at 980; *Dixson v. Union Carbide Corp.,* No. 1127, slip. op., 1987 WL 28389 (Tenn.Ct.App. Dec. 23, 1987); *Vick v. Nashville Bridge Co.,* No. 87–131–II, slip op., 1987 WL 18955 (Tenn.Ct.App. Oct. 28, 1987); *Acklie,* 785 S.W.2d at 358; *Carpen-*

*ter v. Hooker Chem. & Plastics,* 553 S.W.2d 356, 357 (Tenn.Ct.App.1977).

Here, it is undisputed that Bowater's employees did not customarily engage in the type of construction and construction administration that Bechtel was hired to perform, and that Bowater and Bechtel employees were not working side-by-side on this project. Bowater hired Bechtel to oversee the construction operations that Bowater was not equipped to oversee; thus, Bowater was *not* acting as a principal contractor when it hired Bechtel.

Furthermore, in none of the Tennessee cases that determined that the owner occupied the dual role of owner and principal contractor was there also an entity that filled the role that Bechtel filled here. Anyone looking at the functions performed by Bechtel under its contract with Bowater would describe Bechtel as the principal, or general, contractor. Tennessee case law has never held that there can be two principal contractors in a given case. This again strongly indicates to me that Bowater was not occupying the role of a principal contractor, as that role has been understood by the Tennessee courts.

I would conclude that Bowater was an owner, and nothing more, under Tennessee law. I believe that the plaintiff is entitled to sue Bowater in tort for the injuries he sustained while working on Bowater's premises, because Bowater was not his statutory employer, and that the exclusive remedy provisions of Tennessee workers' compensation law therefore are not applicable here. Accordingly, I respectfully dissent.

---

**1.** *See* factors considered in footnote 1 of the majority opinion.