IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Brief January 25, 2013[1]


ANDREA BLACKWELL AND FREDERICK BLACKWELL, CO-
CONSERVATORS FOR THE ESTATE AND PERSON OF ROBERT
BLACKWELL
v.
COMANCHE CONSTRUCTION, INC. AND COMANCHE
CONSTRUCTION OF GEORGIA, INC.


Appeal from the Circuit Court for Dyer County
No. 2009-CV-149     William B. Acree, Judge


No. W2012-01309-COA-R9-CV - Filed April 15, 2013


This interlocutory appeal concerns the statutory employer rule under the Tennessee Workers'
Compensation Act.  The defendant subcontractor rented a crane from a construction rental
company.  The crane rental company sent its employee to the job site to operate the crane.
On the job site, the crane rental company's employee sustained crippling injuries.  The
employee's co-conservators sued the subcontractor in tort.  The subcontractor filed a motion
for summary judgment, arguing that it was a statutory employer of the crane rental
company's employee, pursuant to the Tennessee Workers' Compensation Act, specifically
T.C.A. § 50-6-113, and thus was immune from liability under the exclusive remedy provision
of the Act, T.C.A. § 50-6-108.  The trial court held that the subcontractor was not a statutory
employer and therefore was not shielded by the exclusive remedy provision.   The
subcontractor was granted permission for this interlocutory appeal on the issue of whether
it is a statutory employer under the Workers' Compensation Act.  We hold that, to reach the
issue of whether the subcontractor is a statutory employer, it is first necessary to determine
if the crane rental company was a subcontractor within the meaning of the Act, an issue not
addressed by the trial court.  Consequently, as we are unable on this record to consider the
issue raised on appeal, we hold that this Court improvidently granted permission for this
interlocutory appeal under Tenn. R. App. P. 9 and dismiss the appeal.

---

[1]On March 22, 2013, the parties filed a joint motion requesting oral argument pursuant to Rule 35(a) of the
Tennessee Rules of Appellate Procedure; the parties indicated that a request for oral argument was
"inadvertently omitted" when their appellate briefs were originally filed.  In light of our decision to dismiss
the appeal, we respectfully deny the joint motion.

**Tenn. R. App. P. 9 Interlocutory Appeal; Appeal is Dismissed and Case is Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J. W.S., and J. STEVEN STAFFORD, J., joined.

Melissa A. Maravich and Tannera George Gibson, Memphis, Tennessee for Defendant/Appellants, Comanche Construction, Inc. and Comanche Construction of Georgia, Inc.

Charles M. Agee, Jr. and W. Lewis Jenkins, Jr., Dyersburg, Tennessee for Plaintiff/Appellees, Andrea Blackwell and Frederick Blackwell, Co-conservators for the Estate and Person of Robert Blackwell

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

In 2009, VHP Enterprises, Inc. ("VHP") was hired by the Tennessee Department of Transportation ("TDOT") as the general contractor to perform work that included repairs to a bridge over the Mississippi River, specifically, the I-155 Bridge, also known as the Caruthersville Bridge, connecting Caruthersville, Missouri and Dyersburg, Tennessee. VHP in turn hired Defendant/Appellees Comanche Construction, Inc. and Comanche Construction of Georgia, Inc. (collectively "Comanche") as a subcontractor to perform the repair work to the Caruthersville Bridge ("Subcontract").

The work that was the subject of the Subcontract between VHP and Comanche at times required the obstruction of traffic. This meant that Comanche had to implement traffic controls, including concrete barrier walls to protect workers from traffic and also to protect motorists from hazards caused by the construction. To erect the concrete barriers, Comanche contacted Ford Construction Company ("Ford") to rent a crane for the bridge project.[2] The rental agreement between Comanche and Ford for the crane was oral and Comanche did not obtain any approval for the rental from either VHP or TDOT.

In May 2009, Ford sent two employees, one of whom was Richard Blackwell, to the Comanche job site to operate the crane; it was customary for Ford to supply its rental customer with an operator for its cranes. On the job site, a Comanche employee directed Ford employee Mr. Blackwell where to position the crane and on various other things, all in

---

[2]Comanche owns cranes but nevertheless rented a crane from Ford for this project.

the course of erecting the concrete barrier walls. While Mr. Blackwell was operating the rented crane, it became unstable and tipped over. Mr. Blackwell attempted to jump from the crane as it tipped over. He sustained debilitating brain injuries, the injuries that are the subject of this litigation.[3]

The severity of Mr. Blackwell's permanent injury was such that a conservatorship was necessary. Plaintiff/Appellants Andrea and Frederick Blackwell (collectively "the Blackwells") were designated as co-conservators for the person and estate of Mr. Blackwell.

In December 2009, the Blackwells filed this lawsuit against VHP and Comanche in the Circuit Court for Dyer County, Tennessee.[4] The complaint alleged negligence and sought compensatory damages for the injuries Mr. Blackwell sustained in the accident. In its answer to the complaint, Comanche asserted the exclusivity provision of the Tennessee Workers' Compensation Act, Tennessee Code Annotated § 50-6-108, as a defense. Discovery ensued.

The discovery included the deposition of Lyle Austin, a supervisory employee with Comanche Construction. Mr. Austin was the operations manager at the work site on the day Mr. Blackwell's accident occurred. In his deposition, Mr. Austin explained that, for a subcontractor to take over any part of the overall construction contract, either VHP or Comanche had to obtain the State's approval and fill out several forms. Austin also testified about a provision in the Subcontract with VHP on the written consent to hire a subcontractor. In his testimony, Mr. Austin confirmed that he was in control of the work site and had overall responsibility for the safety of everyone on the site and was giving Mr. Blackwell directions regarding the operation of the crane on the day of the accident. He gave somewhat inconsistent testimony on whether he believed that Ford was a "subcontractor" of Comanche on the day in question.

In September 2010, Comanche filed a motion for summary judgment. Comanche argued that, under the Workers' Compensation Act, specifically Tennessee Code Annotated § 50-6-113, Comanche was Mr. Blackwell's statutory employer. On this basis, Comanche contended that it was immune from liability and sought dismissal of the Blackwells' complaint.

---

[3]As a result of Mr. Blackwell's injuries, Ford's workers' compensation insurance carrier, the Hartford Insurance Company, paid workers' compensation benefits to and on behalf of Mr. Blackwell. Hartford filed an intervening complaint in this matter and a notice of subrogation. Hartford did not file a separate brief in this appeal.

[4]VHP Enterprises, Inc. was dismissed as a party to this litigation in November 2010.

In response, the Blackwells filed a cross-motion for partial summary judgment. The Blackwells noted that Ford was retained only to provide rental equipment and insisted that, on the undisputed facts, Ford Construction was not a subcontractor on this job. In support, the Blackwells filed Mr. Austin's deposition. They also relied on an affidavit by the vice-president of Ford Construction, who took the position that Ford did not subcontract any work from Comanche, as it only rented a crane to Comanche. For this reason, the Blackwells argued that Comanche was not Mr. Blackwell's statutory employer, and thus, it was not shielded from liability under the exclusivity provision of the Workers' Compensation Act.

In February 2012, the trial court held a hearing on both parties' summary judgment motions. In March 2012, the trial court held that the Blackwells' lawsuit against Comanche was not barred by the exclusivity provision of the Workers' Compensation Act because Comanche was not the statutory employer of Mr. Blackwell. Citing **Murray v. Goodyear Tire and Rubber Company**, 46 S.W.3d 171 (Tenn. 2001), the trial court considered two factors to determine whether Comanche was Mr. Blackwell's statutory employer:

> The first factor is whether the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees. The second factor is whether the principal contractor has the right of control over the conduct of the work and over the employees of the subcontractor. According to the undisputed facts, moving or placing concrete barriers is a type of work which the defendants sometime[s] perform. However, the record does not establish that the defendants had the right to control the plaintiff other than to require him to locate the crane in an area so as not to interfere with the flow of traffic and other than to tell him where to place the concrete barriers. Herein, the defendants simply rented a crane and were required to accept an operator employed by the owner of the crane, Ford Construction Company, rather than using one of the defendants' employees.

Thus, the trial court held that placing the concrete barriers was the type of work Comanche sometimes performed, but Comanche did not have the right to control Ford's employee, Mr. Blackwell, so Comanche was not deemed to be Mr. Blackwell's statutory employer. On this basis, the trial court denied Comanche's motion for summary judgment and granted partial summary judgment in favor of the Blackwells.

In April 2012, Comanche filed a request for permission for an interlocutory appeal, pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The trial court granted permission for the Rule 9 interlocutory appeal on the following issue: "[W]hether Robert Blackwell was a statutory employee of any principal, intermediary or subcontractor on the project

commission[ed] by TDOT for repair of the 1-155 bridge over the Mississippi River in Dyer County, Tennessee." This Court granted permission for the Rule 9 interlocutory appeal, without further delineating the issue on appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Comanche presents several issues for review:

> Whether the trial court erred in considering Comanche's control over Mr. Blackwell's work after finding that said work was of the kind performed by Comanche's employees?

> Whether, alternatively, the trial court erred in holding that Comanche did not have sufficient control over Mr. Blackwell's work to be deemed Mr. Blackwell's statutory employer under Tenn. Code Ann. § 50-6-113, when Mr. Blackwell performed his work under Comanche's direction and supervision?

> Whether the trial court erred in holding that Mr. Blackwell's claims are not barred by the exclusivity provisions outlined in Tenn. Code Ann. § 50-6-108?

The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. *Martin v. Norfolk So. Rwy. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

Our review of the trial court's grant of summary judgment in this case is governed by the standard set forth in *Hannan*. The Tennessee Supreme Court recently expounded on the *Hannan* standard:

> In *Hannan*, this Court reaffirmed the basic principles guiding Tennessee courts in determining whether a motion for summary judgment should be granted, stating:
>
>> The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Byrd*, 847 S.W.2d at 215. If the moving party

makes a properly supported motion, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id*. . . .

 . . . [I]n Tennessee, a moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial.

*Hannan*, 270 S.W.3d at 5, 8-9. It is insufficient for the moving party to "merely point to omissions in the nonmoving party's proof and allege that the nonmoving party cannot prove the element at trial." *Id*. at 10. "Similarly, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient." *Martin v. Norfolk S. Ry. Co*., 271 S.W.3d 76, 84 (Tenn. 2008). If the party moving for summary judgment fails to satisfy its initial burden of production, the burden does not shift to the nonmovant and the court must dismiss the motion for summary judgment. *Hannan*, 270 S.W.3d at 5; *Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998).

*Sykes v. Chattanooga Hous. Auth*., 343 S.W.3d 18, 25 (Tenn. 2011) (footnote omitted).

The trial court granted permission for this appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. *See* Tenn. R. App. P. 9. As required under Rule 9, this Court granted permission for the appeal as well. *Id.* "Under Rule 9 of the Tennessee Rules of Appellate Procedure, the issues in a Rule 9 interlocutory appeal are limited to the questions that are certified by the trial court in its order granting permission for the appeal and also certified by the appellate court in its order granting permission for the appeal." *Shaffer v. Memphis Airport Auth.*, No. W2012-00237-COA-R9-CV, 2013 WL 209309, at *3 (Tenn. Ct. App. Jan. 18, 2013) (citing *In re Bridgestone/Firestone*, 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008)).

The questions on appeal are also subject to a further limitation. In an interlocutory appeal, as well as in an appeal as of right, the appellate court considers only questions that were actually adjudicated by the trial court. *Shaffer,* 2013 WL 209309, at *4 (quoting *In re Estate of Boykin*, 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008) ("At the appellate level, 'we are limited in authority to the adjudication of issues that are presented and decided in the trial courts. . . .' " ) (quoting *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976))). To do

otherwise would render the interlocutory appeal a request for an advisory opinion. *Shaffer,* 2013 WL 209309, at *4.

ANALYSIS

For the reasons set forth below, we must conclude that this Court improvidently granted permission for this interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. To explain, a brief review of the law in Tennessee regarding the Workers' Compensation statutes is in order.

"Under the Tennessee Workers' Compensation Act, an employee injured in an accident while in the course and scope of employment is generally limited to recovering workers' compensation benefits from the employer." *Fayette Janitorial Servs. v. Kellogg USA, Inc.,* No. W2011-01759-COA-R-CV, 2013 WL 428647, at *3; 2013 Tenn. App. LEXIS 66, at *7 (Tenn. Ct. App. Feb. 4, 2013) (quoting *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 175 (Tenn. 2001)); Tenn. Code Ann. § 50-6-103. The Act provides that, under certain circumstances, a principal contractor may be required to pay workers' compensation benefits to an employee of a subcontractor:

> A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Tenn. Code Ann. § 50-6-113(a). In enacting Section 50-6-113, the Legislature sought "to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation for their workers." *Brown v. Canterbury Corp.*, 844 S.W.2d 134, 136 (Tenn. 1992); *Mouser v. Buckhead Construction Co., et al.*, No. E2005-00967-COA-R3-CV, 2006 WL 1763679, at *4; 2006 Tenn. App. LEXIS 434, at *10 (Tenn. Ct. App. June 28, 2006). Section 50-6-113 "operates by passing along to upstream contractors the responsibility either to require their immediate contractors or subcontractors to provide workers' compensation coverage to their own employees or to be responsible for the coverage themselves." *Fayette Janitorial Servs.,* 2013 WL 428647, at *4; 2013 Tenn. App. LEXIS 66, at *11 (quoting *Williams v. Premapak Corp.*, No. 01-A-01-9307-CV-00326, 1995 WL 50068, at *2 (Tenn. Ct. App. Feb. 8, 1995)). Section 50-6-113 is said to deem such a principal contractor to be the injured employee's "statutory employer." *Fayette Janitorial Servs.,* 2013 WL 428647, at *3; 2013 Tenn. App. LEXIS 66, at *9-10 (quoting *Stratton v. United Inter-Mountain*

-7-

*Telephone*, Co. 695 S.W.2d 947, 950 (Tenn. 1985) and ***Bostic v. Dalton***, 158 S.W.3d 347, 350 (Tenn. 2005)).

Consistent with the overall purpose of the workers' compensation statutes, in exchange for potential liability for workers' compensation benefits, an employer is immune from liability in tort to the injured employee under Tennessee Code Annotated § 50-6-108, known as the "exclusive remedy" provision of the Workers' Compensation Act. ***Troup v. Fischer Steel Corp.***, 236 S.W.3d 143, 148 (Tenn. 2007); ***Campbell v. Dick Broadcasting Co., Inc.***, 883 S.W.2d 604, 606 (Tenn. 1994). Section 50-6-108 provides:

> The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death.

Tenn. Code Ann. § 50-6-108(a). Immunity under the exclusive remedy provision is extended to "statutory employers" in order to "defeat negligence actions brought against them by the same employees for whom they would have been required to provide workers' compensation coverage." ***Fayette Janitorial Servs.,*** 2013 WL 428647, at *4; 2013 Tenn. App. LEXIS 66, at *12 (quoting ***Williams***, 1995 WL 50068, at *2; 1995 Tenn. App. LEXIS 73, at *5). This immunity extends even to a statutory employer who has not been required to actually pay workers' compensation benefits to the injured employee. ***Fayette Janitorial Servs.,*** 2013 WL 428647, at *4; 2013 Tenn. App. LEXIS 66, at *13 (citing ***Mouser***, 2006 WL 1763679, at *4; 2006 Tenn. App. LEXIS 434, at *11). Thus, as one commentator has described it, the statutory employer often gets "the best of both worlds," in that it typically does not have to pay benefits to the injured employee if its subcontractor is adequately insured but is nevertheless protected from tort claims under the exclusive remedy provision. ***See Fayette Janitorial Servs.,*** 2013 WL 428647, at *5; 2013 Tenn. App. LEXIS 66, at *14-15 (quoting Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer*, 55 Tenn. L. Rev. 405, 429-30 (Spring 1988) (footnote omitted)).

Thus, in the trial court below, Comanche *sought* to be designated as Mr. Blackwell's "statutory employer." Comanche did not seek to be held a statutory employer so that it could be liable to pay workers' compensation benefits to Mr. Blackwell; it did so in order to receive statutory immunity from tort liability for Mr. Blackwell's injuries, pursuant to the exclusive remedy provision of the Workers' Compensation Act.

In this appeal, Comanche contends that the trial court erred in holding that Comanche was not Mr. Blackwell's statutory employer. In support of its argument, Comanche cites the three

tests for determining the statutory employer set forth in ***Lindsey v. Trinity Communications, Inc.***, 275 S.W.3d 411 (Tenn. 2009). Under ***Lindsey,*** the court looks at whether an entity is a principal contractor by considering whether "(1) the company undertakes work for an entity other than itself; (2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or (3) 'the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees.' " ***Lindsey***, 275 S.W.3d at 421 (quoting ***Murray***, 46 S.W.3d at 176; ***Stratton***, 695 S.W.2d at 951-52); ***see also Fayette Janitorial Servs.,*** 2013 WL 428647, at *5; 2013 Tenn. App. LEXIS 66, at *15. Comanche emphasizes that the Court in ***Lindsey*** used the disjunctive "or" in stating the three tests; it argues that at least one of the three tests is met because Comanche employees sometimes moved and placed concrete barriers, and they would have performed this work had Comanche not chosen to rent a crane from a company that sent an operator, namely, Mr. Blackwell. Comanche points out that the trial court acknowledged this fact in its order, so the trial court erred in going on to address the third test, whether Comanche exercised a sufficient amount of control over Mr. Blackwell's work.

In response, the Blackwells insist that Section 50-6-113 is inapplicable – and so the three ***Lindsey*** tests are irrelevant – because Ford was not a "subcontractor" of Comanche. The Blackwells argue that the plain language of Section 50-6-113 sets forth two statutory preconditions to a finding that a given entity was a "statutory employer," namely, that: (1) the injured employee was in the employ of a subcontractor of the principal contractor, an intermediate contractor or another subcontractor, and (2) at the time the injury occurred, the injured employee was "engaged upon the subject matter of the contract to the same extent as the immediate employer." Tenn. Code Ann. § 50-6-113(a). Based on this plain language, the Blackwells argue that Comanche cannot be deemed to be the statutory employer of Mr. Blackwell because Ford was not a subcontractor of Comanche. Therefore, they contend, the exclusivity provision in the Workers' Compensation Act does not shield Comanche from tort liability to Mr. Blackwell.

Initially, we note that Comanche's argument as to the three tests in ***Lindsey*** appears to have merit; the ***Lindsey*** Court clearly used the disjunctive in describing the tests. ***Lindsey,*** 275 S.W.3d at 421. The trial court found that the work done by Ford, moving or placing the concrete barriers, was of the type Comanche "sometime[s] perform[ed]," so it is unclear why the trial court then went on to consider whether Comanche exercised control over Mr. Blackwell's operation of the crane. The trial court's description of the three tests as "factors" may indicate that it misconstrued the three ***Lindsey*** tests as factors to be weighed.

We are unable, however, to reach the issues raised by Comanche because of the threshold issue raised by the Blackwells on appeal – whether Ford is a "subcontractor" of Comanche.

As noted above, Section 50-6-113 provides that a contractor such as Comanche may be deemed to be an injured employee's "statutory employer" if the employee is injured "while in the employ of any of the subcontractors of " the contractor, and while the employee is "engaged upon the subject matter of the contract to the same extent as the immediate employer." Tenn. Code Ann. § 50-6-113(a). Thus, in order for Section 50-6-113 to be applicable, there must first be a finding that Ford, Mr. Blackwell's immediate employer, was a "subcontractor" of Comanche. *See McVeigh v. Brewer*, 189 S.W.2d 812, 815 (Tenn. 1945) (holding that, under the predecessor to Section 50-6-113, it was necessary to determine whether the injured employee was employed by a subcontractor, before it could analyze whether the defendant was the statutory employer of the injured employee). More recent cases applying Section 50-6-113 appear to presuppose that the injured employee must be employed by a subcontractor. *See e.g., Fayette Janitorial Servs.,* 2013 WL 428647, at *3; 2013 Tenn. App. LEXIS 66, at *15 ("[F]or injuries sustained by *employees of subcontractors*, our legislature has extended workers' compensation liability to principal contractors under certain circumstances.") (emphasis added); *Griffith v. Jellico Cmty. Hosp., Inc.*, No. E2009-01431-COA-R3-CV, 2010 WL 2160775, at *3; 2010 Tenn. App. LEXIS 366, at *8 (Tenn. Ct. App. May 28, 2010) ("Because the principal contractor may be held liable for workers' compensation benefits to the *subcontractor's employee*, the principal contractor is considered a statutory employer and is immune from a tort action brought by an injured employee to the same extent as the subcontractor under the exclusive remedy rule.") (emphasis added); *Harness v. Bechtel Jacobs Co., L.L.C.*, No. E2006-00194-COA-R3-CV, 2007 WL 10447, at *3; 2007 Tenn. App. LEXIS 3, at *8 (Tenn. Ct. App. Jan. 3, 2007) ("[P]rincipal contractors are made liable for injuries sustained by "*employees of subcontractors* arising out of and in the course of their employment . . . .") (emphasis added); *Troup v. Fischer Steel Corp.,* No. W2005-00913-COA-R3-CV, 2006 WL 2294548, at *5; 2006 Tenn. App. LEXIS 538, at *14 (Tenn. Ct. App. Aug. 10, 2006) (reversed on other grounds) ("Under certain circumstances, a principal or intermediate contractor may be liable for workers' compensation benefits when an *employee of a subcontractor* suffers on-the-job injuries arising from an accident.") (emphasis added).

The trial court below skipped over this threshold issue without addressing it.[5] On appeal, the Blackwells invite this Court to hold that Ford was not a subcontractor of Comanche. This we decline to do. First, it is questionable whether the issue is even within the purview of the query certified by the trial court for this Rule 9 appeal. As noted above, our authority in a Rule 9 interlocutory appeal is circumscribed by the question for appeal as framed by the trial court. *See Shaffer,* 2013 WL 209309, at *3; *In re Bridgestone/Firestone*, 286 S.W.3d at 902; *Smith v. Hukowicz*, No. M2001-01320-COA-R9-CV, 2003 WL 132483, at *6 (Tenn.

---

[5]We note that the trial court found that Comanche "simply rented a crane" from Ford. This does not amount to a holding on the issue of whether Ford was a subcontractor of Comanche.

-10-

Ct. App. Jan. 16, 2003). Second, as noted above, in a Rule 9 interlocutory appeal, even if the issue raised on appeal falls within the parameters of the question certified by the trial court, we may only consider issues that were actually decided by the trial court. *See In re Estate of Boykin*, 295 S.W.3d at 636; *Shaffer,* 2013 WL 209309, at \*4. For these reasons, we respectfully decline to determine on appeal whether Ford was acting as a subcontractor of Comanche on the day Mr. Blackwell suffered his debilitating injury.

Under those circumstances, we are unable to consider the question certified by the trial court for this Rule 9 interlocutory appeal. Accordingly, we must respectfully conclude that this Court improvidently granted permission for this appeal under Rule 9 of the Tennessee Rules of Appellate Procedure.

On remand, the trial court may, in its discretion, consider the issue of whether Ford was acting as a subcontractor of Comanche on the day of Mr. Blackwell's injury. On remand, the trial court is not precluded from also considering an issue argued by both parties on appeal, that is, whether Mr. Blackwell was a "loaned servant" under the loaned servant doctrine. Under the loaned servant doctrine, if an employer "loans" an employee to a "special employer," the special employer may become liable for workers' compensation benefits in the event the loaned employee is injured on the job. *See Bogus v. Manpower Temporary Services*, 823 S.W.2d 544, 546 (Tenn. 1992); *Winchester v. Shay*, 409 S.W.2d 378, 381 (Tenn. 1966); *Carpenter v. Hooker Chemical & Plastics Corp.*, 553 S.W.2d 799 (Tenn. Ct. App. 1983). *See also* 20 Tenn. Workers' Comp. Prac. & Proc. § 3:2 (2012).

These issues, however, involve fact-intensive inquiries which, under the "rigorous" *Hannan* standard, are unlikely candidates for disposal by the trial court via summary judgment. *See White v. Target Corp.*, No. W2010-02372-COA-R3-CV, 2012 WL 6599814, at \*5-7 (Tenn. Ct. App. Dec. 18, 2012) (discussing high standard for summary judgement on factual inquiries under *Hannan*). *See also Armoneit v. Elliott Crane Service, Inc.*, 65 S.W.3d 623, 630 (Tenn. Ct. App. 2001) (determining that a disputed issue of fact existed concerning for whom a negligent crane operator worked under the loaned servant doctrine).

Therefore, we find that this Court improvidently granted permission for this interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. Consequently, we must dismiss the appeal. This holding pretermits all issues raised on appeal.

## CONCLUSION

The appeal is dismissed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed one-half against Defendant/Appellants Comanche Construction, Inc., Comanche Construction of Geogia, Inc., and their surety, and one-half

-11-

against Plaintiff/Appellees Andrea Blackwell and Frederick Blackwell, co-conservators for the Estate and Person of Robert Blackwell, for which execution may issue if necessary.


                          _____

                           HOLLY M. KIRBY, JUDGE